## MARY SMITH ET AL. v. W. E. HUMPHREYVILLE ET AL.

### Decided June 26, 1907.

**1.—Independent Contractor—Definition.**

An independent contractor is one who, in rendering service, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means by which it is to be accomplished. By the word "results" is meant a production or product of some sort, and not a service. A reservation by the employer of the right, by himself or his agent, to supervise the work for the purpose merely of determining whether it is being done in conformity to the contract, does not affect the independence of the contract. Evidence considered, and held to sustain the defense of independent contractorship.

**2.—Same—Liability of Employer.**

Where the work contracted to be done is necessarily attended with danger however skilfully and carefully performed, or is intrinsically dangerous, the employer is responsible for any injury resulting from its execution, although the act to be performed be lawful.

**3.—Same—Subcontractor.**

A subcontractor may be an independent contractor as between himself and his employer, the contractor.

**4.—Same—Verbal Contract—Effect.**

The mere fact that the contract is verbal does not require that the question of independent contractorship vel non should be submitted to the jury. The testimony as to such contract being clear, unambiguous and undisputed it is the duty of the court to determine the legal effect of the same. Where, however, the evidence as to the nature or character of the contract is conflicting, it is error to refuse to submit the issue to the jury as to the relationship of the parties.

**5.—Fellow Servant—Remote Negligence.**

An employer can not be relieved of liability on the ground that the injury is due to the negligence of a former fellow-servant of the injured person where the injury occurs some time after the act of negligence, and after the injured person has left the employment of the master.

**6.—Contributory Negligence too Remote.**

Where deceased was one of eight or ten persons who worked together in tearing down a wall, a portion of which fell and injured the deceased about a week afterwards as the result of the negligent manner in which the work was done, the possibility or probability that the accident may have been occasioned by the negligence of the deceased himself, was too remote to require the submission of the issue of contributory negligence on the part of the deceased.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Bryan & McRae,* for appellants.—The Houston Drug Company, by its contract with N. C. Jensen to repair and remodel its building, retained such control over the possession of its building, and the said Jensen, in subjecting him to the direction and supervision of its agent and architect Lorehn, in the manner of doing the work, and in having the said Lorehn to supervise and direct this work, as to estop the said drug company from avoiding liability to the plaintiff on the alleged ground that Jensen was an independent contractor. New Orleans, M. & C. R. R. Co. v. Hanning, 15 Wall. (U. S.), 649; Schwartz v. Gilmore, 92 Am. Dec., 227; Faren v. Sellers & Co., 39 La. Ann., 1011 (4 Am. St. Rep., 256); Speed v. Atlantic & Pac. R. R. Co., 71 Mo., 307; Linnehan v. Rollins, 137 Mass., 123 (50 Am. Rep., 287).

The owner of property employing a contractor to do work intrinsically dangerous, or to do work dangerous itself, unless guarded, and making no provision for guarding same, can not escape liability on the ground that the work was done by an independent contractor. Cameron Mill & Elevator Co. v. Anderson, 98 Texas, 156; Covington & Cinti. Bridge Co. v. Steinbrock, 61 Ohio St., 215; 76 Am. St. Rep., 375; Sessengut v. Posey, 67 Ind., 408; 33 Am. Rep., 98; Lubelsky v. Silverman, 96 N. Y. Sup., 1056; Stevens v. United Gas & Elec. Co., 73 N. H., 159; 70 L. R. A., 119; City of Anderson v. East, 117 Ind., 126; 10 Am. St. Rep., 35; Smethurst v. Proprietors, etc., 148 Mass., 261; 12 Am. St. Rep., 550; Hannem v. Pence, 40 Minn., 127; 12 Am. St. Rep., 717; 1 Thomp. Negligence, 680.

*Coleman & Abbott,* for appellees.—Under the undisputed evidence Johnson and Wallace were independent contractors, each having their respective work, and the individual and exclusive control thereof. St. Louis Expanding Metal Fireproofing Co. v. Dawson, 59 S. W. Rep., 847; Simonton v. Perry, 62 S. W. Rep., 1090; City of Groesbeck v. Pinson, 21 Texas Civ. App., 47; Proctor v. San Antonio Ry. Co., 62 S. W. Rep., 939; Boyd v. Chicago & N. W. Ry. Co., 75 N. E. Rep., 496; Galatia Coal Co. v. Harris, 116 Ill. App., 70; Humpton v. Unterkircher, 97 Iowa, 509; 66 N. W. Rep., 776; Crudup v. Schreiner, 98 Ill. App., 337; Dutton v. Amesbury Nat. Bank, 63 N. E. Rep., 405; Klages v. Gillette-Herzog Mfg. Co., 90 N. W. Rep., 1116; Aldritt v. Gillette-Herzog Mfg. Co., 88 N. W. Rep., 741; Kenckel v. Ryder, 62 N. E. Rep., 1096; Boomer v. Wilbur, 57 N. E. Rep., 1004; Neumeister v. Eggers, 51 N. Y. S., 481; Jefferson v. Jameson & Morse Co., 46 N. E. Rep., 272; Conners v. Hennessey, 112 Mass., 96; Mohr v. McKenzie, 60 Ill. App., 575.

REESE, ASSOCIATE JUSTICE.—This is a suit by Mary Smith, widow of Charles Smith, and his two minor children, and Mattie Royster, his mother, against the Houston Drug Company, N. C. Jensen, W. G. C.

Johnson and T. H. Wallace to recover damages for the death of the said Charles Smith alleged to have been caused by the negligence of defendants. Damages are claimed in the sum of $20,000. The court instructed a verdict for the Houston Drug Company, and the case as to the other defendants was submitted to the jury. From a verdict and judgment for defendants plaintiffs appeal.

The Houston Drug Company was the owner of a three-story brick building located on the corner of Preston and Caroline Streets in the city of Houston. It made a contract with defendant Jensen to repair and remodel the building, the work to be done included the raising of the roof and the addition of another story. Jensen contracted with defendant Johnson to do the brick work embraced in his contract with the drug company, part of such brick work being the removal of the brick of the fire-wall which extended above the roof, so as to allow the roof to be raised. Jensen also contracted with the defendant Wallace to raise the roof. In removing the brick from the fire-wall preparatory to raising the roof it was not necessary, nor was it contemplated, that the entire wall should be taken down, but that part of it should be taken down and removed so as to allow the roof to be raised without interference from the fire-wall. The joists of the roof resting upon the wall were attached thereto by anchor plates, which were iron bars about three and one-half inches wide and twelve inches long. The joists rested upon these anchor plates, which were turned up at each end, one end fitting into a place mortised into the joist, and the other end fastened into the wall. The anchor plates extended about four inches beyond the ends of the joists. In removing the brick from the fire-wall the work was done so as to clear the joists, but these anchor plates being covered with mortar were not noticed and were not cleared. When the work of raising the roof began one of these anchor plates hung or remained fastened in the joist, causing a displacement of the brick, several of which tumbled from the top of the wall to the street below upon the deceased Smith, who was upon the sidewalk, killing him.

By their first assignment of error appellants complain of the action of the trial court in instructing a verdict for the Houston Drug Company. The drug company pleaded that it had let the entire work to Jensen and that by the terms of the written contract Jensen was an independent contractor, and on that account it was not liable. Appellants' first contention is that by the terms of this written contract the drug company retained such control over the possession of the building and Jensen, in subjecting him to the direction and supervision of its agent and architect Lorehn, in the manner of doing the work, as to estop the drug company from avoiding liability on the ground that Jensen was an independent contractor.

The contract is very lengthy, embracing many complicated details of the work to be done, which was, generally, to remodel the building, raise the roof and add another story. The distinctive features thereof, which are claimed to give it the character contended for by appellants, are substantially as follows: Jensen was to sufficiently

perform and finish, under the direction and to the satisfaction of the architect, all the work required in remodeling the building and finish and complete it in a sound and workmanlike manner to the perfect satisfaction and approbation of the architect; if the work is not sufficiently explained by the drawings and specifications Jensen was to apply to the architect for such further drawings and explanations as may be necessary and shall comply with the same so far as consistent with the original drawings and specifications, and in the event of doubt as to the meaning of the drawings and specifications the architect shall decide; should any alteration be required in the work shown or described by the drawings or specifications a fair and reasonable valuation of the work added or omitted shall be made by the architect, and the sum to be paid for the work increased or diminished accordingly; Jensen was to take down all portions of the work condemned by the architect as unsound or improper, or not conforming to specifications and drawings; Jensen was not to sublet or assign the contract, or any interest therein, without the written consent of the architect; the drug company is to provide all labor and material not included in the contract and contained in specifications of general work, in such a manner as not to delay the progress of the work; if Jensen refused or neglected to supply a sufficiency of properly skilled workmen or material of proper quality, or failed in performance of any of the agreements contained in the contract, upon such failure being certified by the architect, the drug company was to be at liberty to provide the same and deduct its cost from amount due Jensen, and if the architect shall certify that such refusal or neglect is sufficient grounds therefor, the drug company shall be at liberty to terminate the employment and to enter upon possession of the building, take possession of materials, and employ some one else.

It is not contended that the drug company exercised any control over the work except such as was provided should be done by the architect by the terms of the contract. Lorehn testified that he did not direct the manner or details of the work, or have anything to do with the employment or discharge of the men, or with the management or direction of details of the work; that his going upon the work was merely for the purpose of inspection, to see that the work and materials complied with the contract. It is true that the question is not what was done by the architect towards control of Jensen and his work, but what he had a right to do under the contract. If the employer had the right of control, it is immaterial that he did not exercise it. (16 Am. & Eng. Ency. of Law, 2d ed., 188.) But evidence as to what he did do is material in showing what he had a right to do under the contract as it was understood by the parties.

This approved definition of the term independent contractor is taken from American & English Encyclopedia of Law, vol. 16, 2d ed., p. 187, "Generally speaking an independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of

his work, and not as to the means whereby it is to be accomplished. The word 'results,' however, is used in this connection in the sense of a production or product of some sort, and not of a service." (Casement v. Brown, 148 U. S., 615, and other cases cited in note.) In the same work, page 188, it is said that a reservation by the employer of the right by himself or his agent to supervise the work for the purpose merely of determining whether it is being done in conformity to the contract, does not affect the independence of the contract, and in a note many authorities are cited, all of which support the proposition stated.

In the case of Wallace v. Southern Cotton Oil Company (91 Texas 18), the question was whether one, Davis, was an independent contractor with regard to the work being done, or an employee of the oil company, so as to render it liable for his negligence. The Supreme Court says: "If Davis was an independent contractor in the sense that the company had no right of control as to the manner in which the work was to be done, then he was not the servant of the company; and the plaintiff having been employed by him, can not recover. If, however, the Southern Cotton Oil Company exercised control over the manner in which Davis was to do the work, or over the means by which it was to be done, or if the persons engaged in the work with Davis were under the control and management of said company, then Davis was but its employee and Wallace was likewise but the servant of said company by virtue of his employment by Davis." In Simonton v. Perry, decided by ' this court (62 S. W. Rep., 1090), the question was whether Naquin, the contractor to whom a contract was let by Perry for the construction of a building, was an independent contractor or an employee of Perry, the court says: "The contract gave Perry no right to control the method of doing the work, but did give him the right to require that the walls should be properly constructed. The proof nowhere shows any interference on the part of Perry either as to the method adopted by Naquin or as to whom he should employ to assist him. Perry assumed no control over the employees of Naquin, and did nothing more than demand that the ' brick work should be done in a workmanlike manner, that is to say, he did nothing more than to require that the result should be up to the measure of the requirements," and it was held that Simonton's cause of action was clearly against Naquin and not Perry.

In the application of the general rule the authorities are not altogether in harmony, but it appears clear to us that, by the terms of the contract, the Houston Drug Company reserved no more right of supervision and control, through its architect, of the work to be done than to see that it was done in accordance with the requirements of the contract. This involved no control whatever over the method of doing the work by Jensen. It follows that, by the terms of the contract, Jensen was an independent contractor, and not an employee or servant of the drug company. Cunningham v. International R. R. Co., 51 Texas, 503; Smith v. Milwaukee B. & T. Exchange, 51 Am. St. Rep., 915; Covington Bridge Co.

v. Steinbrock, 76 Am. St. Rep., 382; note to Brown v. Smith, 22 Am. St. Rep., 459.

It is further insisted by appellants that the drug company is liable, notwithstanding the terms of its contract with Jensen, by reason of the fact that the work it had contracted with Jensen to do was intrinsically dangerous. It is a well settled exception to the general rule, that the owner can not claim immunity from liability from the consequences of the acts of his independent contractor, on that ground, if the work to be done is intrinsically dangerous. In Cameron Mill & Elevator Co. v. Anderson (98 Texas, 159), the exception to the rule is thus stated: "As we understand, the general rule is, that one who is having a piece of work done by an independent contractor is not liable for the negligence of the latter, but to this rule there is a well marked exception. So far as we have seen the limitation of the rule has been by no one better expressed than by Judge Dillon. He says: 'The general rule is stated in the preceding section, but it is important to bear in mind that it does not apply where the contract directly requires the performance of a work intrinsically dangerous, however skilfully performed.'" Appellants rely upon this case and upon the opinion of the Court of Civil Appeals therein (9 Tex. Ct. Rep., 22).

If we correctly understand the opinion of Justice Speer it affords no support to appellants' contention in the present case. The work which the independent contractor was engaged to do in that case, as stated in the opinion, "contemplated an excavation in the public street, the *necessary* effect of which was to create an obstruction or defect therein dangerous to the public using such street, and from which injuries to passers-by was reasonably to be anticipated, unless the same was properly guarded or protected." That is, the dangerous consequences were to be reasonably anticipated from the work itself, no matter how skilfully performed. The court adds: "In those cases where the defect, obstruction, or fault is purely collateral to the work contracted to be done, and is a result entirely of the wrongful act of the independent contractor or his workmen, the employer should not be held liable, because such act is not to be anticipated by him." In the case of Engel v. Eureka Club (137 N. Y., 100; 33 Am. St. Rep., 692), it is said: "There are cases of still another class, where the thing contracted to be done is *necessarily* attended with danger, however skilfully and carefully performed, or, in the language of Judge Dillon, is 'intrinsically dangerous,' in which case it is held that the party who lets the contract to do the act can not thereby escape responsibility for any injury resulting from its execution, although the act to be performed be lawful. (2 Dillon Mun. Corp., 1029, and cases cited.) But if the act to be done *may* be safely done in the exercise of due care, although in the absence of such care injurious consequences to third persons would be likely to result, then the contractor alone is liable, provided it was his duty under the contract to exercise such care."

It does not appear that the work to be done in the present case

was "intrinsically dangerous." There was some evidence that the rear wall of the building was unsafe, but that did not affect the front wall, where the injury occurred, and had not the remotest connection with the accident. It appears to us clearly to be made out by the evidence that the falling of the bricks upon the deceased Smith was caused solely by the fact that one end of the iron anchor plate remained fastened in the end of the joist of the roof and the other end in the fire wall, thus displacing the bricks in that portion of the fire wall immediately above the plate and causing the bricks on top of the wall at that place to fall. Whether this was due to the negligence of either of the defendants was a question for the jury, but under no view of it can it be said that the work of raising the roof, if done with proper care, was intrinsically dangerous. (City of Richmond v. Sitterding, 43 S. E. Rep., 563; Baumeister v. Markham, 39 S. W. Rep., 844; Engel v. Eureka Club, 33 Am. St. Rep., 692; note to Covington Bridge Co. v. Steinbrock, 76 Am. St. Rep., 386-399; Smith v. Milwaukee Builders & Traders Exchange, 51 Am. St. Rep., 913; Brown v. Smith, 22 Am. St. Rep., 459; Blake v. Ferris, 55 Am. Dec., 304-318; Vanderpool v. Husson, 28 Barb., 198.)

There is nothing in appellants' contention that the failure of the drug company, Jensen or any one else to barricade the sidewalk, or in any other way give warning of the work going on, had anything to do with the accident to Smith, or that any measure of liability could be predicated upon such failure. Smith had worked upon the building and was as fully aware as any one of every fact of which he would have been apprized by barricades or other warnings about the use of the sidewalk. He occupied a very different position from a mere passer-by using the sidewalk in the usual way.

By their second assignment of error appellants complain of the charge of the court instructing the jury that Wallace and Johnson, subcontractors under Jensen, were, as to him, independent contractors and that neither would be responsible for the negligence of the other. By separate propositions under the assignment, the point is presented as to each of the sub-contractors. It is not disputed that if a sub-contractor be in fact an independent contractor under the original contractor, and not his employee or agent, the same result would follow as in case of such relationship between the owner and the original contractor, and that, whether such sub-contractor is, in fact, an independent contractor, is to be governed by the same rules as apply in the case of the owner and the original contractor. (16 Am. & Eng. Ency. of Law, 194.)

The contracts between Jensen and Wallace and between Jensen and Johnson were verbal, and it is insisted by appellants, that upon this ground alone the question as to whether such evidence constituted them independent contractors under Jensen should have been submitted to the jury. The rule seems to be as broadly stated, as is contended by appellants, in 16 Am. & Eng. Ency. of Law (p. 191), but such of the authorities cited by the author as we have been able to examine do not support the text. In the case of Atlantic Transport Co. v. Coneys (82 Fed. Rep., 177), cited in support of

the proposition, the opinion of the majority of the court is to the contrary, one of the members of the court dissenting on this ground. In Wallace v. Southern Cotton Oil Co. (91 Texas, 18), also cited, it appears that there was a conflict in the testimony as to the relationship between the owner and the contractor under the contract between them, which, of course, required a submission of the issue to the jury. In the present case the only evidence introduced as to the contract between Johnson and Jensen is the testimony of Jensen himself and it is clear, unambiguous and undisputed. We are inclined to think that in such case it was the duty of the court to determine the legal effect of the contract thus established. Without repeating this testimony here it is sufficient to say that we think the court's construction of the terms of the contract between Johnson and Jensen, which embraced all of the brick work, excavations, concrete, etc., and included the work of removing the brick from the fire wall preparatory to the raising of the roof, was correct, and constituted Johnson an independent contractor as herein defined. According to the testimony of Jensen the terms of the contract between himself and Wallace were substantially the same as the contract with Johnson, but Wallace also testified as to this contract and he states that he got his orders as to how the work should proceed from Jensen, and further that he was to raise the roof subject to Jensen's orders; that he was subject to his orders. Wallace also testifies that he was to furnish all necessary tools and perform the labor and that Jensen had nothing to do with this part of it; that he hired his own men and paid them and used his own judgment as to the manner in which the roof was raised, the work of which was subject to his own orders. Taking Wallace's testimony as true, we can not say that the jury would not have been authorized to find that Jensen exercised such control over the manner in which Wallace's work was to be done as would be inconsistent with the relationship of independent contractor. Upon this view we think that the issue as to the nature of the contract between Jensen and Wallace should have been submitted to the jury. (Wallace v. Southern Cotton Oil Co., *supra.*)

The evidence tended to show that during the week preceding the accident the deceased Smith and several other laborers were set to work by Johnson at the work of clearing away the brick of the fire wall, so as to allow the roof to be raised, and that it was due to the omission of some of these laborers to remove the brick so as to clear the anchor plate attached to one of the joists of the roof, that the accident occurred. Smith was not working for Johnson or in his employ at the time of the accident and had not been since the Monday previous to the Saturday when he was killed. The jury were charged that Smith was a fellow servant, under Johnson, with the other persons at work removing the brick, and that if the accident which caused his death was due to the negligence of any of these fellow servants, the defendant Johnson would not be liable. This charge is assigned as error, and we think the assignment must be sustained. The employer can not be relieved of liability on the ground that the injury is due to the negligence

of a fellow servant of the injured person, where the injury occurs some time after the act of alleged negligence, although a proximate result thereof, and while the injured person is not serving in such employment. (1 Shearman & Redf., Negligence, sec. 234; State v. Western Maryland R. R. Co., 63 Md., 433.) This charge, however, was limited to the defendant Johnson, and does not affect the other defendants.

The court also charged the jury that if the deceased Smith worked upon the particular portion of the wall which fell and injured him and he himself was negligent in the manner in which he performed said work, and such negligence contributed to his injury, the jury should find for all of the defendants. The point is presented by proper assignment that this charge was error. The possibility or probability that the accident may have been occasioned by the failure or omission of the deceased himself to clear the identical anchor plate which caused the brick to fall, was too remote to authorize the charge. It is but a possibility arising from the fact that he was one of about eight or ten persons engaged in this work. The evidence did not present the issue of contributory negligence on the part of Smith, or that the accident was due to the negligence of his fellow servants as a bar to his right to recover.

We are inclined to agree with appellants' contention, as presented in the third assignment of error, that the third paragraph of the court's charge, in so far as it presents the issue of Jensen's liability in attempting to raise the roof when the wall from which the brick fell was in an unsafe condition, is inconsistent with the charge given at the request of Jensen that he was not responsible for the acts of any of the persons shown to have been working on the roof, or on the wall preparatory to raising the roof. Considering the entire charge we would not say that the jury was misled by these seemingly contradictory instructions, but in view of another trial, we call attention to the point as presented in appellant's brief.

It is not necessary to discuss the other assignments of error. Except those presenting the questions herein discussed and decided each of them is overruled. None of them present reversible error. In so far as the charges requested by appellants present sound propositions of law applicable to the case they are covered by the court's charge.

We can not forbear to remark that the record bears evidence that the case was tried with the most painstaking care on the part of the trial judge and, with the exception of the errors pointed out, the many complicated issues were presented in a charge exceptionally full, clear and comprehensive.

For the errors indicated the judgment is reversed as to the defendants Jensen, Johnson and Wallace. The judgment for the Houston Drug Company is affirmed.

*Reversed and remanded in part, affirmed in part.*

Writ of error refused.